IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03150-MSK-KLM

DOUGLAS LARSON, in his capacity as Bankruptcy Trustee for the Estate of Cynthia
Coreyn Tester-Lamar,

      Plaintiff,

v.

ONE BEACON INSURANCE COMPANY,

      Defendant.
_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Plaintiff's oral Motion to Compel Response to

Request for Production No. 1 [*see* Docket No. 27; Hearing held March 25, 2013] (the

"Motion").  The Court has carefully reviewed the documents submitted by the parties and

considered the arguments made at the hearing on March 25, 2013.  For the reasons set

forth below, the Motion is **GRANTED in part and DENIED in part**.

### I.  Background

**A.  Factual Allegations**

      According to the Complaint, Plaintiff is the Bankruptcy Trustee for the Estate of

Cynthia Coreyn Tester-Lamar ("Tester").  *Compl.* [#7] ¶ 1.  Ms. Tester was previously an

attorney licensed to practice in Colorado.  Defendant is an insurance company.  *Id.* ¶ 2.

Prior to filing for bankruptcy, Ms. Tester was a defendant in a case styled *Christine Ferer*

*and ChrisPat Aspen, LLC v. Tester & Associates, PC and Cynthia Tester*, Pitkin County

Case No. 2010-CV-327 (the "Pitkin County Action").  *Id.* ¶ 5.  In that lawsuit, the plaintiffs claimed that Ms. Tester and her law firm breached fiduciary duties and were professionally negligent in the prosecution of a construction defect lawsuit and architect malpractice arbitration.  *Id.* ¶ 6.  At the time of that lawsuit and arbitration, Ms. Tester was insured by a Lawyers' Professional Liability Insurance Policy, No. LAP-1288-08 (the "Policy"), issued by Defendant with a liability limit of $1,000,000.  *Id.* ¶ 7.  Defendant hired attorney Peter Thomas ("Thomas") to represent Ms. Tester.

After the plaintiffs in the Pitkin County Action made their initial discovery disclosures, they made a time-limited demand for the Policy limits to settle all claims in the lawsuit, although their identified damages allegedly exceeded $2,000,000 at that time.  *Id.* ¶¶ 8-9. Defendant did not make an offer in response to this demand.  *Id.* ¶ 10.  As the Pitkin County Action progressed, the plaintiffs disclosed further information asserting damages of more than $4,600,000.  *Id.* ¶ 11.  The plaintiffs again offered to settle the lawsuit for the Policy limits, and Defendant again failed to respond.  *Id.* ¶ 12.

A few months after the second settlement offer, Ms. Tester filed a Chapter 7 bankruptcy petition, and Plaintiff in this action was appointed as trustee of her estate.  *Id.* ¶ 13.  As part of the bankruptcy action, Plaintiff agreed to a compromise settlement in the amount of $4,500,000 with the plaintiffs in the Pitkin County Action; this settlement was later approved by the Bankruptcy Court.  *Id.* ¶¶ 16-18.  Plaintiff then brought the present action, in his representative capacity as trustee for the bankruptcy estate of Ms. Tester, to pursue claims of breach of contract and bad faith breach of insurance contract against Defendant.  *Id.* ¶¶ 15, 19-25.  With that background, the Court turns to Plaintiff's oral Motion.

**B.     Discovery Request**

On February 28, 2013, Plaintiff propounded Plaintiff's Request for Production No.

1 on Defendant.  The Request states:

> Please produce YOUR complete paper and electronic files at any location (including the home office file, regional office file, local file, and field files) pertaining to the UNDERLYING LAWSUIT.  This request includes, but is not limited to: any DOCUMENTS concerning settlement or TESTER'S consent to settle, claim files, claim notes, claim manuals, claim guidelines, claim procedures, reports, memos, reinsurance information, telephone slips, correspondence, emails, policies, applications, voice message transcriptions, interoffice/internal communications, handwritten notes, electronic notes, video and audio tapes/files, attorney billing statements, photographs including original negatives and proof sheets, instructions regarding investigation, private investigator reports/files, special investigation unit reports/files, coverage questions, coverage evaluations, exposure evaluations, settlement evaluations, statistical DOCUMENTS, and draft copies and copies of file jackets.

(emphases in original).  Defendant responded with a number of general objections and

specifically stated that:

> [Defendant] also objects to Request for Production No. 1 to the extent it seeks information protected by the attorney client privilege and/or the work product doctrine pursuant to F.R.C.P. 26(b)(3)(A) (after litigation initiated). [Defendant] also objects to the extent the request seeks communications between Cynthia Lamar Tester, an individual who is not a party to the instant action, and her defense counsel, which are protected by the attorney-client privilege.   Until Ms. Tester waives her personal attorney-client privilege, [Defendant] will not produce any privileged attorney client communications between Ms. Tester and her attorneys. [Defendant] further objects to the extent Request for Production No. 1 seeks documents which contain proprietary and/or trade secrets.

(internal citations omitted).  Conferral between the parties failed to yield a resolution.  In

compliance with the Court's procedures for resolving discovery disputes, the parties

contacted the Court to set a hearing on the Motion.  The Court held a telephonic discovery

hearing on the Motion on March 25, 2013.[1]  At the end of the hearing, the Court took the matter under advisement.

On April 1, 2013, Defendant submitted an Amended Privilege Log which clarified the names of the attorneys and others to whom the alleged privileged documents pertain. *OneBeacon Insurance Company's Amended Privilege Log* [#29-1].  On April 2, 2013, Plaintiff specified the documents on the Amended Privilege Log which it sought pursuant to its oral Motion.  *Plaintiff's Notice of Identification of Documents for Production and In Camera Review* [#29].  On April 8, 2013, Defendant submitted those documents identified by Plaintiff to the Court for *in camera* review.

Also on April 8, 2013, Plaintiff submitted his Supplemental Brief Regarding Discovery of Insurance Reserves [#33].  On April 11, 2013, Defendant submitted its Response [#34]. Then, on April 15, 2013, Defendant filed its Supplemental Brief Regarding Discovery of Privileged and Protected Documents [#36].  On April 22, 2013, Plaintiff filed a Response [#38].  On April 25, 2013, Defendant filed a Reply [#39].[2]

## II. Analysis

The documents submitted to the Court primarily consist of insurance reserve

---

[1]  In preparation for the telephonic discovery hearing, the parties e-mailed five documents to the Court: (1) Plaintiff's First Request for Production of Documents; (2) Defendant OneBeacon Insurance Company's Response to Plaintiff's Request for Production; (3) OneBeacon Insurance Company's Privilege Log; (4) a letter dated March 20, 2013 from Plaintiff's counsel to Defendant's counsel; and (5) a letter dated March 25, 2013 from Defendant's counsel to Plaintiff's counsel.  All counsel were copied on the e-mails to the Court.

[2]  Plaintiff asserts that the Court did not invite the parties to submit additional briefing on the issue of privileged documents.  *Response* [#38] at 2.  Plaintiff argues that the Court therefore should not consider the supplemental briefing on any issue other than the issue of insurance reserves, which the Court specifically allowed the parties to submit.  *Id.*  Because both parties addressed the issues raised in the Supplemental Brief, the Court considers it, the Response to it, and the Reply.

information, billing entries for legal services, and communications between and among Ms. Tester, Mr. Thomas, Defendant's representatives, and Defendant's attorneys from the law firm of Wilson Elser Moskowitz Edelman & Dicker LLP ("WEMED").

## A.    Insurance Reserves

Before addressing the privilege issues comprising the heart of this dispute, the Court addresses the discoverability of Defendant's insurance reserves.  Defendant contends that reserve information is not relevant in this case, first, because it cannot serve as an admission regarding Defendant's evaluation of potential liability and exposure, and, second, because the "information is not crucial to Plaintiff's claim because Plaintiff contends that [Defendant] has acted in bad faith whether it did or did not set reserves."  *Response* [#34] at 3-4.

The Tenth Circuit Court of Appeals has rejected the use of loss reserves as sufficient evidence to establish bad faith breach of an insurance policy.  *Signature Dev. Cos. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1223-24 (10th Cir. 2000).  However, the Court did not conclude that information regarding loss reserves is never relevant.  *Bishelli v. State Farm Mut. Auto. Ins. Co.*, No. 07-cv-00385, 2008 WL 280850, at *2 (D. Colo. Jan. 31, 2008).  Further, the Colorado Supreme Court has not held that reserve information is never discoverable.  In *Silva v. Basin Western, Inc.*, 47 P.3d 1184, 1189 (Colo. 2002), the Court held that "reserve information is subject to the same test for discoverability as any other matter."  Here, Fed. R. Civ. P. 26(b) permits discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party" and discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  *See also Williams v. Bd. of Cnty. Comm'rs*, 192 F.R.D.

698, 702 (D. Kan. 2000) (request for discovery should be considered relevant if there is any possibility the information sought may be relevant to a claim or defense).

In this case, Plaintiff has made a specific allegation regarding the relevance of Defendant's reserve information:

> Because Plaintiff has alleged that [Defendant] failed to reasonably settle the claims against Ms. Tester in the underlying action, the insurer's setting of reserves could indicate that [Defendant] believed Ms. Tester had exposure in that action. Conversely, if [Defendant] did not establish reserves, it may suggest that the carrier failed to candidly assess Ms. Tester's exposure. Moreover, if [Defendant] indeed attempted to effectuate a reasonable settlement, then its settlement exposure would presumably be reflected by adjustments to its reserves. To this end, Ms. Tester's insurance policy contained a "hammer clause" whereby [Defendant] could cap its liability and withdraw a defense in the event Ms. Tester withheld her consent to [Defendant's] settlement overtures. Therefore, if Ms. Tester did in fact refuse to provide her consent to [Defendant's] settlement of the underlying action, then presumably [Defendant's] reserves would reflect the capping of its liability.

*Plaintiff's Supplemental Brief Regarding Discovery of Insurance Reserves* [#33] at 4. In response, Defendant contends that its reserve information is not relevant because, first, it cannot serve as an admission regarding Defendant's evaluation of potential liability and exposure, and, second, the "information is not crucial to Plaintiff's claim because Plaintiff contends that [Defendant] has acted in bad faith whether it did or did not set reserves." *Response* [#34] at 3-4.

Defendant's arguments address the weight that information about insurance reserves may be given in determining the underlying issues in this lawsuit. However, Defendant has not demonstrated that this information is irrelevant and, thus, not discoverable. *See* Fed. R. Civ. P. 26(b)(1). Here, as in *Silva*, 47 P3d at 1193, the Court finds that "[t]he establishment of reserves and settlement authority could be relevant and

reasonably calculated to lead to admissible evidence regarding whether the insurance company adjusted a claim in good faith or made a proper investigation, assessment, or settlement of a claim." In short, documents showing Defendant's reserves for the plaintiffs' claims in the underlying Pitkin County Action are likely to lead to the discovery of admissible evidence regarding Defendant's assessment of the matter's settlement value.

Accordingly, the portion of Plaintiff's Motion seeking to compel discovery of insurance reserves information is **granted**. Defendant shall produce unredacted copies of the documents labeled OB00164 and OB02097 in its Amended Privilege Log.[3]

## B.    Billing Statements

Plaintiff also seeks Defendant's billing records. The portions of an attorney's billing statement showing the fee amount, the general nature of the services performed, and the case on which the services were performed are usually not privileged. *Roe v. Catholic Health Initiatives Colo.*, 281 F.R.D. 632, 636 (D. Colo. 2012) (citing *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974) (stating that matters which related to the receipt of fees from a client are generally not privileged)). Conversely, billing statement entries that show a client's motivation in seeking representation, litigation strategy, or the specific nature of services provided are privileged. *Roe*, 281 F.R.D. at 636 (citing *In re Gibco, Inc.*, 185 F.R.D. 296, 299 (D. Colo. 1997)).

The Court has examined each page of the billing records submitted by Defendant for *in camera* review. The Court finds that the records are relevant and merely show the general nature of the services performed and do not demonstrate litigation strategy or other

---

[3] In the Amended Privilege Log, Defendant does not assert attorney client or work product privilege for these two documents. [#29-1] at 5, 20.

privileged matters.   Accordingly, the portion of Plaintiff's Motion seeking to compel discovery of billing records is **granted**.  Defendant shall produce unredacted copies of the documents labeled in the Amended Privilege Log as follows: OB00169-00172, OB00178-00184, OB00186-00189, OB00192-00195, OB00209-00211, OB00215-00218, OB00339-00352, OB00356-00369, and OB00442-00459.[4]

## C.   Waiver of Attorney-Client Privilege

The parties divide the remaining documents essentially into three categories: those squarely addressed at the hearing on March 25, 2013, plus additional documents listed in Exhibit A and Exhibit B to Defendant's Supplemental Brief Regarding Discovery of Privileged and Protected Documents [#36].  Defendant summarizes the documents listed in Exhibit A and Exhibit B as follows:

> Plaintiff seeks production of two categories of privileged/protected documents.  The first includes correspondence between [Defendant], its counsel (WEMED), defense counsel (Peter Thomas), and Cynthia Coreyn Tester-Lamar.  The second is correspondence between [Defendant] and its counsel, WEMED.  Plaintiff is not entitled to either category of privileged documents.  The documents which [Defendant] claims are not discoverable are referenced in the attached excerpts from [Defendant's] privilege log.  Exhibit A contains a listing of the documents containing communications between [Defendant] and WEMED.   Exhibit B contains a listing of the documents containing communications between [Defendant], WEMED and Cynthia Coreyn Tester-Lamar and/or Peter Thomas.

*Defendant's Supplemental Brief Regarding Discovery of Privileged and Protected Documents* [#36] at 1-2.  Defendant "requests that the Court protect from discovery all documents referenced in Exhibits A and B."  *Id.* at 5.  Plaintiff responds that "Plaintiff's Oral Motion to Compel should be granted with respect to certain of the documents in Exhibit A

---

[4]   Having found that these documents are discoverable, the Court does not address in the discussion below whether these documents are discoverable on any other ground.

and all of the documents in Exhibit B." *Plaintiff's Response to Defendant's Supplemental Brief Regarding Discovery of Privileged and Protected Documents* [#38] at 1-2.  The Court here addresses all remaining documents except for those listed in Exhibit A, to which it returns at the end of the Analysis section.

In diversity jurisdiction cases such as this, state law governs issues of privilege. *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998) (stating that "state law supplies the rule of decision on privilege in diversity cases").  In Colorado, the attorney-client privilege "is established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations."  *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009).  The privilege applies only to statements made under circumstances in which there is a reasonable expectation that the statements will be treated as confidential.  *Id.* (citing *Wesp v. Everson,* 33 P.3d 191, 197 (Colo. 2001)).

In Colorado insurance cases, "an attorney retained by the insurance carrier owes a duty to the insured only; there is no attorney-client relationship between an insurance carrier and the attorney it hires to represent the insured."  *Essex Insurance Company v. Tyler*, 309 F. Supp. 2d 1270, 1272 (D. Colo. 2004).  Colorado Formal Ethics Opinion 91 (January 16, 1993), on which the Court in *Essex* relied, states:

> A lawyer retained by a liability insurance carrier to defend a claim against the company's insured must represent the insured with undivided fidelity.  For purposes of this opinion, that retention does not create an attorney-client relationship between the lawyer and the carrier. . . .

> [T]he insured is the client to whom the lawyer's duty of loyalty is owed.

Similarly, Colorado Formal Ethics Opinion 107 (September 18, 1999) provides in pertinent part:

> The Ethics Committee recognizes that the insurer has a legitimate interest in obtaining information needed to monitor the costs of defense. But the attorney may not allow the interests of the insurer to interfere with the interests of the insured. Accordingly, the attorney must ensure that any communication with the insurer or the third party auditor does not breach the duty of confidentiality owed to the insured.

Thus, with respect to Ms. Tester, the attorney-client relationship exists between her and the attorney retained by Defendant, *i.e.*, Mr. Thomas. There is no attorney-client relationship between Mr. Thomas and Defendant or, of course, between Ms. Tester and Defendant. Thus, the communications between Ms. Tester and Mr. Thomas are generally protected, but not when those communications are between Ms. Tester and/or Mr. Thomas on the one hand and Defendant and/or Defendant's legal counsel on the other.

Some of the documents submitted for *in camera* review by Defendant are communications solely between Ms. Tester and Mr. Thomas. *See, e.g.*, OB0003. Had those documents not been disclosed to third parties, they would certainly remain privileged. However, Defendant concedes that it obtained the documents from Mr. Thomas, in connection with the underlying malpractice suit against Ms. Tester. Defendant argues that the documents it received from Mr. Thomas cannot be further disclosed absent a waiver of the attorney-client privilege from Ms. Tester, because the privilege is held by her. However, pursuant to Ethics Opinion 107, in order for Mr. Thomas or Ms. Tester to have disclosed the documents to Defendant, Ms. Tester either explicitly waived the privilege, or she is deemed to have done so implicitly. *See Wesp*, 33 P.3d at 198 ("[I]f a communication to which the privilege has previously attached is subsequently disclosed to a third party,

then the protection afforded by the privilege is impliedly waived.") (citations omitted). Because Ms. Tester either explicitly or implicitly waived the privilege to allow disclosure of the documents by her attorney to Defendant, Defendant may not attempt to enforce the privilege here. Once waived, the privilege as to those communications is gone. *See People in Interest of E.H.*, 837 P.2d 284, 292 (Colo. App. 1992). The Court therefore finds no basis to conclude that the documents received by Defendant from Mr. Thomas which reflect communications with Ms. Tester are subject to the attorney-client privilege, and this argument is rejected as a basis to deny Plaintiff's oral motion. *See, e.g.*, *EMC Ins. Co. v. Mid-Continent Cas. Co.*, No. 10-cv-03005-LTB-KLM, 2012 WL 4668453, at *4 (D. Colo. Oct. 3, 2012).

Defendant argues, however, that the various communications involving itself and Ms. Tester and/or Mr. Thomas and/or Defendant's legal counsel are protected by the common interest doctrine. "In Colorado, the joint defense (or common interest) doctrine is an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to third parties." *The Marianist Province of the United States, Inc. v. Century Indemnity Co.*, No. 08-cv-01760-WYD-MEH, 2010 WL 3938355, at *2 (D. Colo. Oct. 5, 2010) (citing *Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 469 (Colo. App. 2003). The doctrine includes "pre-existing confidential communications and documents that are shared during a common enterprise." *Id.* "The privilege applies only to communications given in confidence and intended and reasonably believed to be part of an on-going and joint effort to set up a common legal strategy." *Black*, 74 P.3d at 469 (citations omitted).

When parties who previously shared a common interest become adverse in

subsequent litigation, one cannot invoke the attorney-client privilege against the other to preclude the other from seeking information related to the underlying matter. *Roberts Aircraft Co. v. Kern*, No. 96-N-1214, 1997 WL 524894, at *3 (D.Colo. March 20, 1997); *Matter of Quantum Chemical/Lummus Crest*, No. 90 C 778, 1992 WL 71782, at *3-4 (N.D.Ill. April 1, 1992). The rationale behind the subsequent litigation exception is that pursuant to their common interest, the parties had no expectation of confidentiality regarding disclosure of information to each other in the underlying matter, so subsequent disclosure of it violates no confidences. *Id.*

However, and importantly here, "[t]he common interest doctrine presupposes that both the insured and the insurer were, at one time, represented by the same legal counsel." *Roberts Aircraft Co. v. Kern*, No. 96-N-1214, 1997 WL 524894, at *3 (D. Colo. Mar. 20, 1997). Here, at no time were Ms. Tester and Defendant co-litigants represented by Mr. Thomas. Under the circumstances of this case, where Defendant hired Mr. Thomas to represent Ms. Tester, Colorado law is clear that there is no attorney-client relationship between Defendant and Mr. Thomas. *See Essex Ins. Co.*, 309 F. Supp. 2d at 1272. Thus, the common interest doctrine is not applicable here and cannot be used by Defendant to extend Ms. Tester's attorney-client privilege to matters discussed with or provided to Defendant or Defendant's legal counsel.

Accordingly, the Court finds that Ms. Tester's attorney-client privilege has been waived as to the documents submitted to the Court for *in camera* review by Defendant.[5]

---

[5] Because the Court finds that Ms. Tester's attorney-client privilege was waived, the Court need not address the *Foster* balancing analysis, as argued by the parties. *See In re Foster*, 188 F.3d 1259, 1265-66 (1999) (holding that a trustee may control an individual debtor's privilege, subject to the court's balancing "the interests of a full and frank discussion in the attorney-client

Further, and for the same reasons, the Court also finds that Defendant's attorney-client privilege has been waived as to the documents submitted to the Court that have previously been disclosed to Mr. Thomas and/or Ms. Tester.

Accordingly, the portion of Plaintiff's Motion seeking to compel discovery of the following documents is **granted**.  Defendant shall produce unredacted copies of the documents labeled in the Amended Privilege Log as follows: OB00024-00026, OB00046-00047, OB00049, OB00064, OB00067, OB00071, OB00277, OB00391, and OB02173.[6]

## D.    Work Product Doctrine

Defendant also asserts that many of the documents submitted for *in camera* review are subject to protection via the work product doctrine.  As stated in Fed. R. Civ. P. 26(b)(3)(B), the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" are protected from disclosure to opposing parties in discovery.  However, such work product may be discovered if it is relevant to any party's claim or defense and if that party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A).

The work product doctrine is "broader than and distinct from the attorney-client privilege."  *In re Foster*, 188 F.3d 1259, 1272 (10th Cir. 1999).  Attorneys' mental impressions are broadly protected in order to further "society's interest in protecting the

---

relationship and the harm to the debtor upon a disclosure [against] the trustee's duty to maximize the value . . . and represent the interests of the estate").

   [6]  Defendant does not assert work-product protection for these documents.  The work product issue is addressed below.

adversary system by shielding litigants' work-product from their opponents, and thus freeing lawyers to create such materials without fear of discovery and exploitation." *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)).  "The protection provided by the work product doctrine is not absolute, and it may be waived."  *In re Qwest Commc'ns Int'l Inc.,* 450 F.3d 1179, 1186 (10th Cir. 2006) (citation omitted).

Unlike the attorney-client privilege, where voluntary disclosure of a privileged communication to a third party always waives that privilege, waiver of work product "is limited to disclosures that are likely to fall into an adversary's possession."  *In re Commercial Fin. Servs., Inc.*, 247 B.R. 828, 853 n.33 (N.D. Okla. 2000).  Therefore, it is less likely that work-product protection has been waived by disclosure to others than that the attorney-client privilege has been waived under the same circumstances.  *See, e.g.*, *Carey-Canada, Inc. v. Cali. Union Ins. Co.*, 118 F.R.D. 242 (D.D.C. 1987).  In other words, the pertinent question is not whether the information was disclosed, as with the attorney-client privilege, but whether the information was disclosed to an adversary.  *See, e.g.*, *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).  In *United States v. AT&T*, the Court of Appeals for the D.C. Circuit explained that:

> [The work product doctrine] "does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent.  The purpose of the work product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation . . . .  A disclosure made in the pursuit of . . . trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege.  We conclude, then, that while the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege.

642 F.2d at 1299 (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).

The issue here, therefore, is whether the disclosure of work product between and among Ms. Tester, Mr. Thomas, Defendant, and Defendant's counsel (WEMED) constituted disclosure to an adversary.  Under the circumstances of this case, the Court finds that the answer is "no."  There is no indication that Ms. Tester was adverse to Defendant or that any party anticipated further litigation until informed by Plaintiff that he would pursue a lawsuit against Defendant based on an alleged breach of the insurance contract.  The opponents of these individuals and entities in the underlying litigation were the plaintiffs in the malpractice suit.  Ms. Tester clearly aligned herself with Defendant in the underlying litigation and did not anticipate the relationship becoming adversarial.  Thus, the Court finds that disclosure of work product among Ms. Tester, Mr. Thomas, Defendant, and WEMED did not constitute waiver regarding third parties.  *See, e.g.*, *Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 572-73 (E.D. Cal. 2002) (holding that, in the underlying lawsuit which the insurer defended, the sharing of information between the insurer and the insured was alone insufficient to constitute waiver of work product with respect to third parties).

Most of the sought-after documents contain work product prepared for Ms. Tester's pre-petition lawsuit, *i.e.*, the underlying malpractice action.  Pursuant to *Foster*, Plaintiff may obtain work product prepared for that pre-petition lawsuit even if there has not been waiver by disclosure between the insurer and the insured.  This work product may not be withheld from the debtor's bankruptcy trustee, "so long as the trustee and the client are not adverse" in "any way relevant to the work-product doctrine."  *Foster*, 188 F.3d at 1273.  The main concern in these circumstances is "society's interest in protecting the adversary system by

shielding litigants' work-product from their opponents, and thus freeing lawyers to create such materials without fear of discovery and exploitation." *Id.* (citing *Hickman*, 329 U.S. at 510-11).  Thus, "[w]hen a trustee's interest . . . does not conflict with a debtor's, there is little reason to worry that sharing work-product will inhibit other attorneys, out of concern for their clients' future interests, from developing such materials." *Foster*, 188 F.3d at 1273.

Regarding the issue of adversity between Plaintiff (the trustee) and Ms. Tester (the debtor), Plaintiff argues that Ms. Tester will experience little harm from Defendant's disclosure of the documents assertedly protected by work product privilege.  The parties agree that there is no possibility that criminal charges will be brought against her if the documents are revealed.  Further, Plaintiff argues that any money it receives from Defendant in this lawsuit inures to Ms. Tester's benefit because the money will go directly to pay Ms. Tester's creditors and thereby reduce her debt.

Defendant, however, asserts that Ms. Tester does not wish to have the bad faith claim pursued by Plaintiff, even though her opposition may not be in her best economic interest.  Defendant argues that Ms. Tester opposes the bad faith litigation as a matter of principle and that she did not want Defendant to settle the malpractice case, in part in order to protect her professional reputation.  Defendant also argues, both as a general matter and assertedly per Ms. Tester's desire, that as a matter of public policy the work product privilege which pertains to these materials should be preserved.[7]

The parties agree that the facts of this case are unique, in that it is unusual for the

---

[7] Defendant also argues that *Foster* has limited value because the bad faith claim was created by Plaintiff and was not part of Ms. Tester's pre-petition causes of action against third parties.  As the parties agree, the Bankruptcy Court has already decided that the bad faith claim is part of Ms. Tester's estate, and the Court will not revisit that issue.

debtor to, at the least, disapprove of and, at the most, vehemently disagree with the bankruptcy trustee in pursuing matters that may increase the economic health of the debtor's estate. It is far from clear from the parties' arguments that Plaintiff will, indeed, be financially better off if she obtains a judgment against Defendant here. The parties fail to discuss whether or how the malpractice settlement obligation will be met if the Trustee does not recover enough in the present action to fulfill that obligation. Regardless, however, Ms. Tester has clearly aligned herself with Defendant and against the Trustee in this matter. As such, the Court finds that Plaintiff and Ms. Tester are adverse and that, pursuant to *Foster*, the work product at issue is protected from discovery by Plaintiff.

Thus, the Court finds that work product privilege has not been waived and that Plaintiff is not otherwise entitled to the documents for which Defendant claims this protection. However, documents which do not contain work product must necessarily be produced by Defendant. Accordingly, because they do not contain "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B), the portion of Plaintiff's Motion seeking to compel discovery of the following documents is **granted**. Defendant shall produce unredacted copies of the documents labeled in the Amended Privilege Log as follows: OB0003-0004, OB00018, OB00266, OB02264-02269, and OB02277-02282.

## E.      Privilege Between Defendant and Its Attorneys

As previously noted, the Court separately addresses privilege regarding documents between Defendant and its counsel. Defendant's Exhibit A [#36-1] contains excerpts from Defendant's privilege log listing documents containing communications between Defendant

and its counsel WEMED.  As noted, Plaintiff concedes that not all documents in Exhibit A are discoverable.  *Response* [#38] at 1-2.  Plaintiff argues that certain of these documents may be discoverable if they were made in the presence of a third party, if they include any underlying and otherwise unprivileged facts, or if the privilege was waived.  *Id.* at 3-4. Plaintiff further argues that some documents listed in Exhibit A may be discoverable pursuant to the exception to the work product doctrine under Federal Rule of Civil Procedure 26(b)(3)(A).  *Id.* at 7.

The Court has performed an *in camera* review of the following documents listed in Exhibit A to determine whether each is protected by the attorney-client privilege and/or the work product doctrine and subject to any of the exceptions urged by Plaintiff in his written brief and at the oral argument: OB02246-02248, OB02283-02284, OB02285-02287, OB02312-02315, OB02316-02323, OB02349, OB02451, OB02454-02456, OB02457-02464, OB02471-02479, OB002480-02483, OB02484-02488, OB02489-02494, OB02495-02509, OB02519-02533, OB02534-02542, OB02543-02551, OB02552-02564, OB02564, OB02832, OB02847, OB02850-02852, OB02853-02855, OB02856-02857, OB02860, OB02874-02875, OB02880-02881, OB02886-02887, OB02896, OB02900-02902, OB02910-02911, OB02944-02945, OB02953, and OB02956-02957.

Because they do not contain "confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations," *Tucker*, 232 P.3d at 198, or "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B), the Court finds that the following documents are <u>not</u> subject to the attorney-client privilege or the work product doctrine: OB02562-02564.  Accordingly, the

portion of Plaintiff's Motion seeking to compel discovery of these documents is **granted**. Defendant shall produce unredacted copies of the documents labeled OB02562-02564 in its Amended Privilege Log.

Further, the Court finds that the remaining documents listed in Exhibit A contain "confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations," *Tucker*, 232 P.3d at 198, and/or "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B). Accordingly, the portion of Plaintiff's Motion seeking to compel discovery of all other documents listed in Exhibit A is **denied**.

### F.      Waiver Pursuant to the At-Issue Doctrine

Finally, Plaintiff also argues that the attorney-client privilege and work product immunity as to certain documents were waived by Ms. Tester when she filed an Affidavit [#12-2] in support of the pending Motion for Summary Judgment [#12]. Plaintiff specifically takes issue with Ms. Tester's assertions that she refused to provide her consent to Defendant to settle the underlying action, that she did not file for bankruptcy as a result of the ongoing underlying action, and that she did not believe she had a bad faith claim against Defendant.  *See Aff. of Tester* [#12-2] ¶¶ 4-5, 8, 11.

To determine whether a matter has been put at issue and thus has created an implied waiver, the Court must examine whether: (1) the assertion of privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through the affirmative act, the asserting party put the privileged information at issue by making it

relevant to the case; and (3) application of the privilege denies the opposing party access to information vital to his defense. *Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, No. 10-cv-02349-WJM-KMT, 2013 WL 1969264, at *2 (D. Colo. May 13, 2013) (citing *Mountain States Tel. & Tel. Co. v. DiFede*, 780 P.2d 533, 543-44 (Colo. 1989)).

Regarding the first prong, the Court finds that Defendant and Ms. Tester asserted the privilege through an affirmative act on their part, *i.e.*, filing Ms. Tester's affidavit in support of Defendant's Motion to Dismiss (which was later converted into the Motion for Summary Judgment).  Regarding the second prong, the Court finds that Defendant and Ms. Tester put the privileged information at issue by making it relevant to the case, *i.e.*, by asserting this information in support of Defendant's dispositive motion.  Regarding the third prong, the Court finds that applying the privilege under these circumstances would deny Plaintiff access to relevant information vital to its bad-faith claim against Defendant.

Accordingly, the Court finds that the at-issue doctrine applies to certain of the documents provided by Defendant for the Court's *in camera* review.  After careful examination of each document, the Court finds that, pursuant to the at-issue doctrine, Defendant must produce the followed documents: OB00024-00026, OB00046-00047, OB00049, OB000391, and OB0002053.[8]

---

[8] Defendant may redact everything below line 19 on OB002053, as the text there has not been placed at-issue by Ms. Tester's affidavit.

Further, to the extent that the Court finds that OB00024-00026, OB00046-00047, OB00049, and OB00391 have been placed at issue by Defendant and Ms. Tester, this finding is in addition to the Court's earlier finding that the attorney-client privilege as to these documents has been waived.

### III.  Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that Plaintiff's oral Motion is **GRANTED in part and DENIED in part**, as outlined above.  The Motion is **denied** as to all documents not ordered to be produced in this Order.

IT IS FURTHER **ORDERED** that **on or before June 13, 2013**, Defendant shall produce to Plaintiff the documents responsive to Plaintiff's Request for Production No. 1, as outlined above.

Dated:  June 10, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge